NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
JEAN COLASURDO CONNOLLY,         :
                                 :
                                 :   Civil Action No.: 04-5127 (JLL)
            Plaintiff,           :
                                 :
v.                               :   OPINION
                                 :
MITSUI O.S.K. LINES              :
(AMERICA), INC. and PAUL DELUCA, :
                                 :
            Defendants.          :
_____:

For the Plaintiff: Peter J. Cresci, Esq. (*Cresci & Black LLC*)
For the Defendant: Ana P. Ventry, Esq. (*Nixon Peabody LLP*)

**LINARES**, District Judge.

     This matter comes before the Court on the motion of Mitsui O.S.K. Lines (America), Inc. and Paul DeLuca (collectively "Defendants") for summary judgment [CM/ECF #67]. There was no oral argument. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Defendants' motion is granted with respect to DeLuca in full. Defendant's motion for summary judgment is also granted with respect to Mitsui as to all of Plaintiff's federal law claims, and for gender discrimination, imposing a gender-based hostile work environment, disability discrimination, imposing a disability-based hostile work environment, and retaliation under the NJLAD. Defendants' motion is, however, denied as to Plaintiff's claims against Mitsui for age discrimination and an age-related hostile work environment under the NJLAD.

**BACKGROUND**

The facts set forth herein are taken from the parties' Local Civil Rule 56.1 Statements unless otherwise noted.

Plaintiff Jean Colusardo Connolly ("Plaintiff" or "Connolly") is a sixty-five year old woman who suffers from rheumatoid arthritis. (Pl. 56.1 Statement ¶ 2.) She worked for Defendant Mitsui O.S.K. Lines (America), Inc. ("Mitsui") from 1993 until 2009, and at the time of her termination her title was Coordinator of Equipment Control and Inter-Modal. (Id. at ¶¶ 2, 4, 42.) At some point after joining Mitsui, Connolly notified Mitsui of her arthritis. (Id. at ¶ 7.) Mitsui provided Plaintiff with a chair, a mouse, and two successive footstools to meet her needs. (Id. at 23, 34.) Mitsui denied Connolly's request for an ergonomic keyboard and denied her permission to move her monitor. (Id. ¶ 34, 48.)

In approximately 2001, Defendant Paul DeLuca ("DeLuca") became Plaintiff's supervisor at Mitsui. (Id. at ¶¶ 24.) After commencing work under DeLuca, Connolly claims that several specific events occurred, constituting the factual basis for one or more of her claims. DeLuca and DePalmer reduced Plaintiff's workplace responsibilities, including informing her on February 20, 2002, that she would not be interviewing new truckers in the future. (Id. at ¶ 25.) On June 20, 2003, DeLuca shifted Connolly's daily work schedule later by half an hour, explaining this action by stating that "you are old and have nothing better to do."[1] (Id. at ¶¶ 21-22.) Connolly was suspended for three days after a verbal altercation with coworkers Rose Lao

---

[1] Plaintiff's assertion that DeLuca made a similar statement to another Mistui employee is inadmissible hearsay, as Plaintiff does not point to an affidavit by that employee. Plaintiff's recollection of the conversation is an out-of-court statement offered for its truth, and although DeLuca's statement may be an admission of a party opponent, Plaintiff cannot admit her own recollection of another person's conversation with DeLuca. Fed. R. Evid. 805.

and Kelly Testa when Connolly questioned the reassignment of her duties on December 18, 2003. (Id. at ¶ 27.) On February 19, 2004, Connolly's lunch time was changed from noon to 1:00 P.M., one hour later than she had customarily taken lunch. (Id. ¶ 32.)

Connolly further alleges that DeLuca and coworkers made rude and obscene comments in the workplace and that she was prevented from working overtime. (Id. at ¶¶ 30, 35, 53.) She was also required, when working under DeLuca, to notify other individuals when she went to the bathroom. (Id. ¶ 47.) Based on these facts, Connolly's Third Amended Complaint claims federal and state claims for age, gender, and disability discrimination, retaliation, and working in a hostile work environment.

Defendants state that any actions detrimental to Connolly were taken in response to workplace performance issues: her suspension was due to rudeness in an interaction with two coworkers, her work responsibilities were reduced in accordance with a management policy directive unrelated to her disability, and that the change in her work hours was made for efficiency reasons. (Def. 56.1 Statement ¶¶ 68, 106-07, 129-130.) They further assert that overtime was not restricted but required prior approval and her computer monitor was moved for safety and supervisory reasons. (Id. 119-120; 149-150.)

Plaintiff filed her discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on June 2, 2004, and received her right-to-sue letter on July 29, 2004. She filed her original complaint on October 20, 2004, and a summons was issued to Plaintiff the following day. Defendant apparently received the summons on February 17, 2005, and Plaintiff states that service of such summons was accompanied by the Amended Complaint, filed with this Court on February 28, 2005.

Magistrate Judge Hedges issued an order to show cause based upon Plaintiff's failure to prosecute on June 30, 2005. On August 9, 2005, Plaintiff filed a motion for entry of default and for default judgment against Defendant for failure to answer. On August 10, 2005, the Clerk of the Court entered default against Defendant. On January 5, 2006, this Court wrote a letter to Plaintiff, informing Plaintiff of a hearing date for the motion for default judgment and directing Plaintiff to notify Defendant of said hearing. On January 25, 2006, by way of letter to the Court, Defendant requested leave to file a motion to vacate default and to dismiss for Plaintiff's failure to effectuate proper service. On January 27, 2006, this Court postponed the hearing and granted leave to Defendant to file a motion to dismiss. On February 10, 2006, Defendant filed a motion to set aside the entry of default pursuant to Federal Rule of Civil Procedure 55(c), to dismiss the original and amended complaints for failure to effect timely service of process pursuant to Federal Rules of Civil Procedure 12(b)(5) and 4(m), and to dismiss the original and amended complaints for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). This Court referred the motion to Magistrate Judge Hedges. On February 22, 2006, Judge Hedges issued his Report and Recommendation in which he recommended that Plaintiff's original and amended Complaints be dismissed without prejudice. This Court vacated in part and adopted in part Judge Hedges's Report and Recommendation, and Defendant's motion to dismiss was granted in part and denied in part on August 24, 2006.

Another motion to dismiss followed on May 30, 2007, which resulted in dismissal of some of the claims in the Amended Complaint on November 21, 2007. After further amendments, the instant motion for summary judgment was filed on Plaintiff's Third Amended Complaint on January 12, 2009.

## DISCUSSION

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

Defendant moves for summary judgment on several bases, including failure to exhaust, the statute of limitations, failure to present evidence sufficient for a prima facie case, failure to proffer evidence of pretext, and the bar against suing a supervisor directly in an employment discrimination case. This Court turns first to Plaintiff's federal claims: the Third Amended Complaint alleges that Plaintiff was discriminated against, retaliated against, and subjected to a

5

hostile work environment by Defendants in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (the "ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12(a), et seq. (the "NJLAD").

A.     **Discrimination Claims**

     a.     **Disability and Gender Discrimination Claims**

Turning first to Plaintiff's disability and gender discrimination claims under Title VII, the ADA, and the NJLAD, this Court finds that Plaintiff has failed to meet her burden to produce evidence of pretext in order to survive summary judgment. After the establishment of a prima facie case and the production of a legitimate, non-discriminatory rationale for action by the defendant, "a plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000) (Title VII & ADEA); Shaner v. Synthes, 204 F.3d 494, 503 (3d Cir. 2000) (ADA); Waldron v. SL Indus., Inc., 56 F.3d 491, 503 (3d Cir. 1995) (applying Third Circuit pretext rule under the NJLAD).

Defendants have asserted that they acted against Connolly for several legitimate reasons, such as efficiency and maintaining supervision. Assuming arguendo that the various acts laid at the door of Defendants in this case present adverse employment actions, the only evidence

presented by Connolly indicating that the legitimate, nondiscriminatory rationales put forward by Defendants is a single statement by DeLuca, in response to Connolly's questioning his change in her work hours. DeLuca told Connolly that "you are old and have nothing better to do." (Pl. 56.1 Statement ¶ 22.) This statement goes only to age discrimination, and does not support a finding of pretext related to gender or disability discrimination.

  Connolly attempts to point to other examples of evidence of pretext in her brief, but this Court finds them incapable of raising material issues of fact as to pretext. Page 3 of Plaintiff's Exhibit M, relied upon in her brief as evidence that she complained to Mitsui of discrimination before her confrontation, is an email listing routine human resources policies, and does not provide evidence of pretext because it does not disclose any complaint to Mitsui by Connolly, as she alleges. (Pl. Opp. Br. at 9.) Her discussion with Dennis Sheehan similarly does not disclose evidence of pretext, even taken in the light most favorable to Connolly: he replied "you know why" when asked by Connolly what the rationale for her firing would be if that action was taken. (Id.) Connolly provides no evidence that Sheehan's statement was not to be believed or that it arose from some illegal motive, and therefore does not provide evidence of pretext. Similarly, although Plaintiff claims that she complained to Robert Colombo ("Colombo") at Mitsui at some time, the evidence Plaintiff points to in the record merely indicates that Mitsui did not investigate Connolly's EEOC charge. (Id.; Pl. Opp. Ex. H at 44.) Connolly also points to the work records of some other Mitsui employees who arrived late at work and were not docked pay for such behavior, although she does not explain how such an arrangement would create doubt as to Mitsui's stated reasons for changing her work hours or enforcing its time policies. (Pl. Opp. Br. at 10.) Late arrivals would not interfere with the phone coverage late in the day desired by

DeLuca, and Plaintiff demonstrates no connection between enforcement of its make-up time policy and any protected status she enjoys. Finally, Connolly asserts for the first time in her opposition papers that her January 2009 termination from Mitsui was an adverse employment action. (Pl. Opp. Ex. O ¶ 45.) She provides no facts related to her termination that provide any factual context for the event, apparently inviting the Court to speculate that she was terminated for discriminatory reasons. Speculation, however, is not sufficient to demonstrate pretext. Boykins v. Lucent Techs., Inc., 78 F. Supp 2d 402, 413 (E.D. Pa. 2000). Defendants are, therefore, entitled to summary judgment on Plaintiff's claims for gender and disability discrimination under Title VII, the ADA, and the NJLAD.

### b. Age Discrimination Claims

Having determined that Connolly's gender and disability discrimination claims fail on the issue of pretext, this Court moves on to address Defendants' arguments concerning her prima facie case for age discrimination. In an age discrimination claim under the ADEA or the NJLAD, a plaintiff must show that "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified . . . (4) under circumstances that raise an inference of discriminatory action. . . ." Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir. 2003). Mitsui does not dispute that Connolly was over forty, or that she was qualified for a position that she held for about eleven years. The Defendants do, however, dispute whether or not Plaintiff can satisfy the last two elements of her prima facie case for age discrimination.

"Assigning an employee to an undesirable schedule can be more than a 'trivial' or minor

change in the employee's working conditions." Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 788 (3d Cir. 1998). In examining the issue of a shift change as an employment action, the Third Circuit Court of Appeals has found that changing an employee from early/late shift work to a fixed, normal workday schedule could constitute an adverse employment action if it constituted a change in the "terms, conditions, or privileges of employment." Mondzelewski, 162 F.3d at 788. The Mondzelewski court further held that even a relatively mild schedule change could create a material issue of fact. Id.

Connolly need only supply evidence of a sufficiently adverse employment action to avoid summary judgment on that prong of her age discrimination claim, and while she complains of a variety of workplace issues, this Court finds that it need only address the change in Connolly's work schedule ordered by DeLuca in June of 2003. At that time, Connolly's entire workday was moved one half-hour later in conjunction with DeLuca's statement about her age. Defendants admit that the change negatively affected Connolly's commute, creating a negative change to the terms and conditions of her employment under circumstances from which an inference of discrimination can be drawn. See Florence v. Runyon, 990 F. Supp. 485, 498 (N.D. Tex.1997) (finding schedule change impacting employee's commute relevant in adverse employment action inquiry); Def. 56.1 Statement ¶ 132. Connolly, therefore, meets her burden at summary judgment in asserting that she suffered an adverse employment action.

Having established a prima facie case of age discrimination, the burden moves to Defendants to assert a legitimate, non-discriminatory reason for changing Connolly's schedule. Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007). Defendants claim that the change in Connolly's schedule was made in order to encourage better use of Connolly's time and to

9

provide additional phone coverage later in the day. Defendants having met their burden, Connolly must provide evidence that Defendants' stated reasons for changing her work hours were pretextual in order to survive summary judgment. Wishkin, 476 F.3d at 185. Here, the statement by DeLuca concerning Connolly's age would suffice to show that discrimination could have been an animating reason for the change in her schedule. Id.

Defendants argue, however, that the single statement by DeLuca about Connolly's age cannot support a finding of pretext in this case based on two cases. First, Defendants point out that in Keller v. Orix Credit Alliance, Inc., the Third Circuit Court of Appeals found that a plaintiff alleging a single allegedly discriminatory statement by the defendant—to the effect that younger bankers might be required for some work—was insufficient to demonstrate pretext. 130 F.3d 1101, 1111-12 (3d Cir. 1997). The Court of Appeals found that the statement concerning the younger bankers was removed in time by four or five months from the decision to discharge, did not indicate that the only solution to the work problem at hand was the hiring of younger bankers, and, finally, that younger bankers would not be replacing the plaintiff in Keller, but assisting him. 130 F.3d at 1112. Here, the statement by DeLuca was apparently closer in time to the work schedule change, was not proposing an alternative solution to a business issue, and could be understood to imply that DeLuca acted for some reason related to Connolly's age.

The other case relied upon by Defendants, Parker v. Verizon Pennsylvania, Inc., emphasizes the temporal connection between a statement and an employment action discussed in Keller, and also stresses the authority of the speaker. 309 F. App'x 551, 559-60 (3d Cir. 2009) (unreported). Connolly provides no indication in her briefing of how close in time DeLuca's statement was to the change in her work schedule, but on a motion for summary judgment this

Court makes all inferences in the light most favorable to the nonmoving party.  Here, this Court will not find based on the evidence presented by the parties that DeLuca's statement was remote in time from the change in Connolly's schedule.  This Court also notes that DeLuca was not a person without authority over Connolly, as was the speaker in Parker: he was her direct supervisor and personally changed Connolly's schedule.  309 F. App'x at 559-60.  Under either Keller or Parker, DeLuca's statement in this case would suffice to demonstrate pretext, and, therefore, this Court finds that only Defendant's motion for summary judgment is denied as to Plaintiff's age discrimination claims.

### 3. Timeliness of Plaintiff's ADEA Claim

Although relevant only to Plaintiff's federal age discrimination claim under the ADEA, Defendants argue that they are entitled to summary judgment on Plaintiff's federal discrimination claims because Plaintiff failed to file her original complaint within the 90 days permitted under federal law.  Ruehl v. Viacom, 500 F.3d 375, 383 n.11 (3d Cir. 2007).  Plaintiff claims that her original complaint was timely and satisfied the filing deadline, and also mentions laches and waiver as doctrines supporting the timeliness of her claims.

"[A] judicial complaint must be filed within 90 days of either (1) receipt of a notice that a charge filed with the EEOC has been dismissed or (2) notice EEOC proceedings are being terminated by the EEOC."  Ruehl, 500 F.3d at 383 n.11.  The 90-day filing requirement is considered to be akin to a statute of limitations.  Communications Workers of Am. v. New Jersey Dept. of Personnel, 282 F.3d 213, 216 (3d Cir. 2002).

Here, the EEOC issued a dismissal and notice of rights letter to Connolly on July 27,

2004. Plaintiff filed her original complaint on October 20, 2004, which was dismissed by this Court. (Letter Op. and Order of Aug. 24, 2006 at 6.) "It is a well recognized principle that a statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice. As regards the statute of limitations, the original complaint is treated as if it never existed." Cardio-Medical Assocs., Ltd. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 77 (3d Cir. 1983). The first Amended Complaint in this matter was filed February 28, 2005, more than 90 days after Plaintiff received her dismissal from the EEOC, and therefore outside of the time period in which a complaint could be filed.

As to Plaintiff's attempt to apply waiver or laches, this Court finds that neither applies. First, Defendants did not waive their statute of limitations argument; it was properly raised in their answer to the Third Amended Complaint, upon which no motion to dismiss was filed. (Ans. at 8.) Second, Plaintiff mentions the application of laches in the introduction of her opposition brief, but fails to set forth any law or facts applying the equitable doctrine to this case, and this Court deems Plaintiff's laches argument waived. (Def. Opp. Br. at 3, 13.) This Court, therefore, finds that Plaintiff may proceed on her age discrimination claim only under the NJLAD, and that Defendants are entitled to summary judgment on her ADEA claim for discrimination.

**B.    Retaliation**

In her retaliation claims, Connolly states that she was retaliated against based on her age through the December 2003 suspension after she complained of disparate treatment. (Third Am. Compl. ¶ 18.) Connolly claims she was subject to retaliation under Title VII and the ADEA for

filing her EEOC claim, after which she was subject to increased workplace scrutiny, further isolation at work, and the institution of a hostile work environment. (Id. ¶ 25.) She makes similar claims under the NJLAD, adding that she was subject to discrimination for filing this lawsuit. (Id. ¶ 35.) In her opposition brief, Connolly further asserts that she lost overtime opportunities and that her job responsibilities were diminished. (Pl. Opp. Br. at 18-19.) Defendants argue that Connolly's retaliation claims must be dismissed because she cannot show adverse employment actions or causal connections sufficient to maintain a prima facie case of retaliation.

In order to set forth a prima facie case of illegal retaliation, a plaintiff "must show that: (1) he engaged in a protected activity; (2) the employer was aware of that activity; (3) the employer took some adverse action against him; and (4) the circumstances were sufficient to permit the inference that the protected activity was a contributing factor for the adverse action." Hasan v. United States Dept. of Labor, 545 F.3d 248, 251 (3d Cir. 2008).

This Court finds that no adverse employment action occurred that can sustain a retaliation claim. This Court has already addressed and rejected Plaintiff's arguments, supra, that she made internal complaints of discrimination to either Sheehan or Colombo on or about the time of her schedule change or her suspension. Connolly's protected activities, therefore, began in 2004 with the filing of the EEOC complaint. Any adverse employment action, therefore, would have had to occur subsequent to the filing of her EEOC complaint or this lawsuit. All of the potentially adverse employment actions suffered by Connolly, however, occurred prior to the filing of the EEOC claim in 2004: her job responsibilities were diminished in February 2002 and both the schedule change and suspension occurred in 2003. As to the directive from DeLuca that

Plaintiff notify other members of the department when leaving her desk, this policy had too slight an impact on Plaintiff's work conditions to constitute an adverse action: she was not prevented from leaving her desk, but merely required to give notice to her coworkers that she was away from her desk, and thus giving notice was not sufficiently materially adverse.  See Witcher v. Sodexho, 247 F. App'x 328, 331 (3d Cir. 2007) (unreported) (applying "materially adverse" test for employment action under the ADEA).  The only remaining issue put forth by Connolly that could establish that she suffered an adverse action after the filing of her EEOC claim or federal complaint was her loss of overtime opportunities, which would constitute an adverse employment action if true.  Chestnut v. General Motors Corp., No. 06-4921, 2008 WL 4093713, at *5 (E.D. Pa. Sept. 3, 2008).  The only evidence placed into the record in support of Connolly's loss of overtime, however, is the conclusory statement in her affidavit that she had her "overtime stopped."  (Pl. 56.1 Statement ¶ 36; Pl. Opp. Br. Ex. O ¶ 39.)  The only evidence in the record concerning overtime is related to overtime worked by Connolly on a specific project, where Mitsui provided for a limited amount of overtime.  (Def. 56.1 Statement ¶¶ 115-122.)  Connolly exceeded the amount of overtime permitted by the company on that project, and asserted that she was not paid for it.  (Id. ¶¶ 119-121.)  Connolly points to no additional evidence of lost or denied overtime, and even if her general assertion of denied overtime is sufficient to support her claim, points to no evidence from which a fact-finder could infer discriminatory intent from such a denial of overtime.  Connolly, therefore, does not carry her burden at summary judgment of placing any relevant facts concerning the reasons for her overtime stoppage in material doubt. This Court finds that Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

C.  **Hostile Work Environment**

Defendants argue that they are entitled to summary judgment on Plaintiff's hostile work environment claims because she failed to exhaust her federal administrative remedy, she cannot point to evidence of sufficient severity or pervasiveness, and she fails to allege that any of the workplace harassment she allegedly suffered was related to her protected classifications. (Def. Br. at 27.) Plaintiff asserts that she satisfied the exhaustion requirements and generally argues that her harassment evidence is sufficient. (Pl. Opp. Br. at 14-18, 19.) The parties also dispute whether or not Defendants are entitled to summary judgment based on a Burlington safe harbor defense for Connolly's failure to use internal discrimination protection procedures at Mistui.

1.  **Exhaustion of Federal Hostile Work Environment Claims**

Even assuming that Plaintiff's EEOC complaint provided notice that she alleged a hostile work environment at Mitsui, this Court has previously noted Plaintiff's Amended Complaint was filed more than 90 days after she received her dismissal notice from the EEOC. The 90-day filing requirement is treated as a statute of limitations in federal employment discrimination, and Plaintiff failed to file within the permitted period. Ruehl, 500 F.3d at 383 n.11; Communications Workers of Am., 282 F.3d at 216. Defendants are, therefore, entitled to summary judgment on Plaintiff's federal hostile work environment claims.

2.  **Plaintiff's NJLAD Hostile Work Environment Claim**

A hostile work environment claim under the NJLAD requires a plaintiff to prove (1) that the conduct would not have occurred but for the employee's protected class and that the conduct was "(2) severe or pervasive enough to make a (3) a reasonable [member of the protected class] believe that (4) the conditions of employment were altered and that the working environment is

15

hostile or abusive." <u>Lehmann v. Toys R Us, Inc.</u>, 626 A.2d 445, 454 (N.J. 1993) (emphasis in original removed).  In addressing hostile work environment claims under the NJLAD, the focus is on the harassing conduct, but the effect of such conduct must be examined as a whole, not individually, and a single event can suffice to show a hostile work environment.  <u>Lehmann</u>, 626 A.2d at 454, 455.

With respect to alleged conduct that occurred because she was disabled, Connolly states that Mitsui sought documentation of disability-related absences, that her time was monitored closely, that DeLuca moved her monitor back to its original position, and that DeLuca denied her an ergonomic keyboard.  (Pl. Opp. Br. at 14-16.)  This conduct, even if all of it is related to her disability, is not severe enough to create a hostile work environment.  Even considered together, the disability-related conduct could not be considered "severe," and Defendants are entitled to summary judgment on her hostile work environment claims predicated on her disability.

Similarly, Connolly fails to set forth a hostile work environment claim based on her gender.  The only allegation she makes that is conceivably gender-related is the use of obscenities in the workplace by DeLuca and others, some of which could be considered gender-specific.  In determining whether similar conduct is severe or pervasive, New Jersey courts have looked to the following factors:

> (1) the total physical environment of the plaintiffs' work area; (2) the degree and type of obscenity that filled the environment of the workplace, both before and after the plaintiffs were assigned to the specific workplace; (3) the nature of the unwelcome sexual words or sexual gestures; (4) the frequency of the offensive encounters; (5) the severity of the offensive encounters; (6) whether the unwelcome comments or gestures were physically threatening; (7) whether the offensive encounters unreasonably interfered with any plaintiff's work performance, but subject to the admonition that

> each plaintiff is not obliged to prove that the unwelcome comments or gestures actually did interfere with each plaintiff's work performance; and (8) whether the offensive encounters had an effect on any plaintiff's psychological well-being, but also subject to an admonition that each plaintiff need not demonstrate specific psychological harm, for, as we have noted, the nature of the harm to any plaintiff is the creation of a hostile work environment.

Baliko v. International Union of Operating Eng'rs, Local 825, 730 A.2d 895, 903-04 (N.J. Super. Ct. App. Div. 1999). Here, there is no evidence that the vulgar language was directed specially at Connolly, that it increased after her assignment to her department, that it was directed toward her gender or any other protected category, that any of the language was physically threatening, or that the use of vulgar language was particularly severe in any particular instance. Defendants are, therefore, entitled to summary judgment on Plaintiff's hostile work environment claim based upon her gender.

With respect to Connolly's age, however, this Court finds that Connolly sets forth sufficient facts to survive summary judgment. Connolly's version of the conversation she had with DeLuca about her schedule change is most easily interpreted as DeLuca stating unambiguously that her schedule was changed because of Connolly's age. This was also a sufficiently brazen statement to satisfy the Lehmann single-event severity test for harassment. Lehmann, 626 A.2d at 454. See also Taylor v. Metzger, 706 A.2d 685, 691 (N.J. 1998) (finding that unambiguously racist slur uttered by supervisor was sufficient to indicate hostile work environment). Furthermore, a reasonable individual of Connolly's age could believe that the event indicated a hostile environment different with different working conditions than before the statement.

   **3.**  **Safe Harbor**

Defendants seek to have this Court apply the Burlington Industries, Inc. v. Ellerth defense to a hostile work environment claim. 524 U.S. 742, 765 (1998). The Burlington Industries, Inc. defense was enunciated in the following terms by the Supreme Court:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . . No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

524 U.S. at 765. This Court has already found, however, that Connolly has met her burden in setting forth evidence of an adverse employment action, namely the change in her schedule for allegedly discriminatory reasons. The Burlington Industries, Inc. defense, therefore, does not apply in this instance, as evidence of a "tangible employment action" is in the record, and this Court denies summary judgment to Defendants with respect to Plaintiff's age-based hostile work environment claim.

D.    DeLuca's Individual Liability Under the NJLAD

This Court having narrowed Plaintiff's claim to age discrimination and an age-related hostile work environment under the NJLAD, the final remaining issue is whether or not DeLuca may be individually liable for violation of the NJLAD. Plaintiff and Defendants disagree about whether or not supervisors may be personally liable under the NJLAD if the supervisor was not

an aider or abettor.

The NJLAD provides for individual liability for employers, and aiding and abetting liability for "all persons." <u>Cicchetti v. Morris County Sheriff's Office</u>, 947 A.2d 626, 645 (N.J. 2008). Both the New Jersey Supreme Court and the Third Circuit Court of Appeals have held that supervisors employed by an organization are not themselves individually liable as employers under the NJLAD. <u>Hurley v. Atlantic City Police Department</u>, 174 F.3d 95, 125 (3d Cir. 1999); <u>Tarr v. Ciasulli</u>, 853 A.2d 921, 928 (N.J. 2004). With respect to aiding and abetting, the New Jersey Supreme Court has recently stated that "individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the 'aiding and abetting' mechanism that applies to 'any person.'" <u>Cicchetti</u>, 947 A.2d at 645.

Here, DeLuca, was a supervisor employed by Mitsui, and cannot be individually liable as an employer under the NJLAD. <u>Tarr</u>, 853 A.2d at 928. He can also not be held liable under the NJLAD as an aider or abettor, as it was his conduct that was alleged to be discriminatory or harassing in this case. <u>Cicchetti</u>, 947 A.2d at 645. This Court, therefore, finds that DeLuca is entitled to summary judgment on all of Connolly's remaining claims against him.

## CONCLUSION

For the foregoing reasons, Defendants' motion is granted with respect to DeLuca in full. Defendant's motion for summary judgment is also granted with respect to Mitsui as to all of Plaintiff's federal law claims, and for gender discrimination, imposing a gender-based hostile work environment, disability discrimination, imposing a disability-based hostile work environment, and retaliation under the NJLAD. Defendants' motion is, however, denied as to Plaintiff's claims against Mitsui for age discrimination and an age-related hostile work

environment under the NJLAD.  An appropriate order accompanies this opinion.


DATED: September 21, 2009				     /s/ Jose L. Linares			
						United States District Judge